IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
NORTHERN DIVISION

**KELLY BASS**                                                                                            **PLAINTIFF**

**V.**                              **CASE NO. 3:20-CV-167-BD**

**ANDREW SAUL, Commissioner,**
**Social Security Administration**                                                **DEFENDANT**

## ORDER

**I.   Introduction:**

On October 24, 2017, Kelly Bass applied for disability benefits, alleging disability beginning on August 1, 2015. (Tr. at 10) Ms. Bass's claims were denied initially and upon reconsideration. *Id*. After conducting a hearing, the Administrative Law Judge (ALJ) denied Ms. Bass's application. (Tr. at 26) Ms. Bass requested that the Appeals Council review the ALJ's decision, but that request was denied. (Tr. at 1) Therefore, the ALJ's decision stands as the final decision of the Commissioner. Ms. Bass filed this case seeking judicial review of the decision denying her benefits.[1]

**II.   The Commissioner's Decision:**

The ALJ found that Ms. Bass had not engaged in substantial gainful activity since the alleged onset date of August 1, 2015. (Tr. at 12) At step two of the five-step analysis, the ALJ found that Ms. Bass had the following severe impairments: morbid obesity,

---

[1] The parties consented to proceed before a magistrate judge. (Doc. No. 4)

cervical spine degenerative disc disease, obstructive sleep apnea, bilateral carpal tunnel syndrome, and hypertension. *Id*.

After finding that Ms. Bass's impairments did not meet or equal a listed impairment (Tr. at 14), the ALJ determined that Ms. Bass had the residual functional capacity (RFC) to perform work at the light exertional level with limitations. (Tr. at 15). She was limited to no more than occasional bilateral overhead reaching duties but could frequently perform handling and fingering duties. *Id*. She could have no more than moderate exposure to fumes, odors, and gases. *Id*.

The ALJ determined that Ms. Bass was capable of performing her past relevant work as an inspector. (Tr. at 23) The ALJ also made an alternative step-five finding. Relying upon the testimony of a Vocational Expert (VE), the ALJ found, based on Ms. Bass's age, education, work experience and RFC, that she was capable of performing work in the national economy as a price tag ticketer and storage facility rental clerk. (Tr. at 25) Thus, the ALJ determined that Ms. Bass was not disabled. *Id.*

### III. Discussion:

A. Standard of Review

In this appeal, the Court must review the Commissioner's decision for legal error and assure that the decision is supported by substantial evidence on the record as a whole. *Brown v. Colvin*, 825 F.3d 936, 939 (8th Cir. 2016) (citing *Halverson v. Astrue*, 600 F.3d 922, 929 (8th Cir. 2010)). Stated another way, the decision must rest on enough evidence that "a reasonable mind would find it adequate to support [the] conclusion." *Halverson*,

600 F.3d at 929. The Court will not reverse the decision, however, solely because there is evidence to support a conclusion different from that reached by the Commissioner. *Pelkey v. Barnhart*, 433 F.3d 575, 578 (8th Cir. 2006).

B.   Ms. Bass's Arguments on Appeal

Ms. Bass maintains that the evidence supporting the ALJ's decision to deny benefits is less than substantial. She argues three points in this appeal: (1) the ALJ should have found mental impairments to be severe at step two; (2) the RFC did not fully incorporate her limitations; and (3) the ALJ failed to resolve an apparent conflict between VE's testimony and the *Dictionary of Occupational Titles* (DOT) at steps four and five.

Ms. Bass asserts that she suffered from depression and anxiety, but she never availed herself of regular or specialized psychiatric treatment. (Tr. at 46, 1115–1116) The failure to seek regular and continuing treatment contradicts allegations of disability. See *Gwathney v. Chater*, 104 F.3d 1043, 1045 (8th Cir. 1997). Ms. Bass reported that anxiety medications helped her. (Tr. at 729–731) Impairments that are controllable or amenable to treatment do not support a finding of total disability. *Mittlestedt v. Apfel*, 204 F.3d 847, 852 (8th Cir. 2000). Ms. Bass routinely had normal mental status examinations. (Tr. at 13, 356, 723, 730, 805) In June of 2018, consultative examiner Dr. Samuel Hester, Ph.D., noted that Ms. Bass had a good attitude and appropriate affect; she was cooperative; and she had logical thought processes. (Tr. at 1115–1121) He confirmed that Ms. Bass pursued no formal mental health treatment. *Id*. Dr. Hester opined that Ms. Bass would have the ability to perform most all work functions, except for completing tasks in an

3

acceptable timeframe (owing to slow ambulation). (Tr. at 1119–1121) The two non-examining mental health experts at the initial and reconsideration levels of appeal found mental impairments were non-severe. (Tr. at 22–23)

Ms. Bass alleges that her mental impairments should have been ruled severe by the ALJ at step two. The claimant has the burden of proving that an impairment is severe, which by definition significantly limits one or more basic work activities. *Gonzales v. Barnhart*, 465 F.3d 890, 894 (8th Cir. 2006); see *Bowen v. Yuckert*, 482 U.S. 137, 141 (1987); 20 C.F.R. § 404.1521(a). The benign mental health record, including three medical opinions revealing minimal limitations, and the lack of formal mental health treatment support the ALJ's determination that mental impairments were non-severe.

While Ms. Bass alleged problems with hypertension, obesity, carpal tunnel syndrome, sleep apnea, and musculoskeletal conditions, the record does not reveal that these conditions were disabling. Ms. Bass admitted on a number of occasions that she did not take her medications as prescribed. (Tr. at 1014–1016) As noted, this failure undercuts allegations of disability. *Kisling v. Chater*, 105 F.3d 1255, 1257 (8th Cir. 1997). When Ms. Bass did comply with treatment plans, her conditions were controlled. Objective imaging and clinical examinations revealed, at most, mild conditions. (Tr. at 319–320, 382–383, 404–423, 721–725, 1064–1069) She had full range of motion in her hands with no atrophy. (Tr. at 22) She treated sleep apnea conservatively with a CPAP machine. (Tr. at 1146) Ms. Bass sought medical care primarily at emergency rooms instead of seeking regular care for her conditions. Even after a year-and-a-half gap in

4

medical treatment, Ms. Bass reported that she was doing well. (Tr. at 1016) She was urged to exercise and lose weight by her doctors. (Tr. at 482–483) And she could perform a variety of daily activities, such as helping with chores, cooking, shopping in stores, going to church, and visiting with friends. (Tr. at 22, 46–49, 220–226) Such daily activities undermine her claims of disability. *Shannon v. Chater*, 54 F.3d 484, 487 (8th Cir. 1995).

Still, Ms. Bass contends that the RFC for light work with postural limitations outstrips her abilities. A claimant's RFC represents the most she can do despite the combined effects of all of her limitations and must be based on all credible evidence. *McCoy v. Astrue*, 648 F.3d 605, 614 (8th Cir. 2011). In determining a claimant's RFC, the ALJ has a duty to establish, by competent medical evidence, the physical and mental activity that the claimant can perform in a work setting, after giving appropriate consideration to all of impairments, both severe and non-severe. *Ostronski v. Chater*, 94 F.3d 413, 418 (8th Cir. 1996). An ALJ is not required to include limitations in the RFC, however, that are not supported by the evidence in the record. *McGeorge v. Barnhart*, 321 F.3d 766, 769 (8th Cir. 2003).

Ms. Bass had mostly normal clinical examinations. When she took her medication, she improved. As noted, she was non-compliant with treatment recommendations, and had long gaps in treatment. She did not seek out all of the treatment options suggested by her doctors because she could not afford it; but she also did not show that she utilized low- or no-cost medical care. (Tr. at 22, 591–593). See *Riggins v. Apfel*, 177 F.3d 689,

693 (8th Cir. 1999) (absent evidence claimant was denied low-cost or free medical care, claimant's argument he could not afford medical care was appropriately discounted). The ALJ considered the entire record and all of Ms. Bass's credible limitations when he formulated the RFC.

Finally, Ms. Bass argues that the ALJ did not resolve an apparent conflict between VE testimony and the DOT. She specifically suggests that she could not perform the jobs that the VE identified because they require frequent reaching, and the ALJ limited her to occasional overhead bilateral reaching in the RFC.

After determining that a claimant cannot perform past relevant work at step four, the burden shifts to the Commissioner to prove that other jobs exist which the claimant can perform. See *Nunn v. Heckler*, 732 F.2d 645, 649 (8th Cir. 1984). The ALJ may meet this burden at step five by eliciting testimony by a VE in response to "a properly phrased hypothetical question that captures the concrete consequences of a claimant's deficiencies." *Porch v. Chater*, 115 F.3d 567, 572 (8th Cir. 1997). Before relying on VE evidence to support a determination that a claimant is not disabled, the ALJ has an affirmative responsibility to ask about "any possible conflict" between VE testimony and the DOT, and to obtain an explanation for any such conflict. *Renfrow v. Colvin*, 496 F.3d 918, 920–21 (8th Cir. 2007); see Social Security Ruling 00-4p, 2000 WL 1898704 (Dec. 4, 2000).

The ALJ in this case realized that there was a potential conflict related to reaching but found that Ms. Bass could perform her past relevant work as well as other jobs

identified by the VE. There are a number of cases involving reaching conflicts in this Circuit, and the decisions are not all aligned. Where an ALJ fails to ask the VE about an apparent conflict or where a VE responds that she relied on her experience to resolve the conflict, courts have reversed. See *Montoya v. SSA*, 2019 U.S. Dist. LEXIS 99311 *4–5 (E.D. Ark., June 13, 2019)(VE's statement that his testimony was "based on [his] experience" does not suffice); *Humphrey v. Berryhill*, 2019 U.S. Dist. LEXIS 50243 *18 (E.D. Mo. March 26, 2019)(the VE provided "no insight into the conflict" or how to resolve it). Cursory or incomplete explanations from the VE are insufficient to support an ALJ's step-five decision. However, where the VE provides more detail about his qualifications and experience, as well as his knowledge of how identified jobs are actually performed, the VE's testimony is sufficient. *Jones-Brinkley v. SSA*, 2021 U.S. Dist. LEXIS 20302 *6–7 (E.D. Ark. Feb. 3, 2021)(VE may rely on his judgment and experience with the jobs in question to resolve any possible conflict); *Porter v. Berryhill*, 2018 U.S. Dist. LEXIS 37141 *42 (W.D. Mo. Mar. 7, 2018)(VE's response that his testimony was "supplemented by his knowledge and experience of human resources and work practices in business and industry" was sufficient to resolve the conflict with respect to reaching); *Yeley v. Berryhill*, 2018 U.S. Dist. LEXIS 154465 *26–28 (E.D. Mo. Sept. 11, 2018); *Smith v. SSA*, 2020 U.S. Dist. LEXIS 240226 *7 (E.D. Ark. Dec. 22, 2020). When an ALJ directly questions a VE about the conflict, and the VE gives thorough answers, the bar is cleared.

In this case, the ALJ asked the VE several times about the possible conflict with respect to reaching. (Tr. at 60–65) The ALJ specifically referred to the VE's experience and work in the field, his formal education, and his knowledge about the DOT to assess any discrepancy in Ms. Bass's ability to perform the identified jobs. *Id*. The VE said he used his "knowledge, education, training, and experience" to answer each of the ALJ's hypotheticals. *Id*. He reiterated that statement on cross examination by Ms. Bass's attorney. *Id*. The ALJ inquired about whether the VE had an advanced degree in his field, and he responded in the affirmative. *Id*. These exchanges at the hearing laid a proper foundation, and the ALJ did not err at step five.

IV.  **Conclusion**:

There is substantial evidence to support the Commissioner's decision to deny benefits. The ALJ did not err at step two; the RFC properly incorporated Ms. Bass's credible limitations; and the VE's testimony about the reaching conflict provided a sufficient explanation. The finding that Ms. Bass was not disabled within the meaning of the Social Security Act must be, and hereby is, AFFIRMED. Judgment will be entered for the Defendant.

IT IS SO ORDERED this 6th day of May, 2021.

_____
UNITED STATES MAGISTRATE JUDGE